## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**KATHRYN LEE, as Personal Representative of**
**the Estate of Michael Allen Lee, and SHELLY**
**LEE,**

      **Plaintiffs,**

      **v.**

**KAUP KATTLE COMPANY and ANDREW**
**KAUP,**

      **Defendants.**

**Case No. 19-2600-JAR-ADM**

## <u>MEMORANDUM AND ORDER</u>

This diversity action arises out of a motor vehicle accident that occurred on August 23,

2018, in Sherman County, Kansas, near Goodland, when Michael and Shelly Lee's vehicle hit a

deceased black bull in the left lane of westbound Interstate 70.  Before the Court are Defendants

Kaup Kattle Company and Andrew Kaup's Motion for Summary Judgment (Doc. 88) on

Plaintiffs' negligence claim and Plaintiffs Kathryn Lee and Shelly Lee's Motion for Summary

Judgment (Doc. 90) on comparative fault.  The motions are fully briefed and the Court is

prepared to rule.  As described more fully below, the Court denies Defendants' motion for

summary judgment.  The Court grants in part and denies in part Plaintiffs' motion for summary

judgment on comparative fault.

### I.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no

genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[1]  In

---

[1] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[3]  A fact is "material" if, under the applicable substantive law, "it is essential to the proper disposition of the claim."[4]  "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party on the issue.'"[5]  Cross summary judgment motions should be evaluated as two separate motions.[6]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[7]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[8]

---

[2] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[4] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248).

[6] *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[8] *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

## II.     Uncontroverted Facts

The following facts are either uncontroverted, stipulated to, or viewed in the light most favorable to the nonmoving party.[9]

Defendant Andrew Kaup owned livestock in Sherman County, Kansas; he is the sole owner of Defendant Kaup Kattle Company ("Kaup Kattle"). Kaup Kattle is in the business of raising and selling livestock. In August 2018, Kaup entered into a verbal lease with Northwest Kansas Technical College to lease Boyington Arena, also known as College Rodeo Arena, located at 700 W. Highway 24, in Goodland, Sherman County, Kansas ("the arena"). The school wanted to have the property cleaned up with plans to use it for raising 4-H animals during the summer.

Before placing any livestock in the arena, Kaup did a walk-through and checked all of the gates and fencing. During this walk-through, Kaup noted that in order to keep his bulls there, "[t]he gates going to the barn needed to be closed because there was an unfinished section of fencing back there," which he further described as a "temporary panel . . . that [he] didn't want to mess with, so [he] just locked it out."[10] Kaup testified at his deposition that he "didn't like" this temporary panel on the exterior fencing when he did the walk-through—he was worried about it and did not think it was stable.[11] He chained the temporary panel to the post on one side because he was concerned that otherwise, the exterior fence was not in good enough condition to keep the bulls enclosed.

---

[9] Defendants did not file a reply to Plaintiffs' response in opposition to Defendants' motion for summary judgment. Thus, to the extent they are supported by the record and are not conclusory or argumentative, the Court deems admitted Plaintiffs' additional statement of material facts. *See* D. Kan. R. 56.1(b)(2).

[10] Kaup Depo., Doc. 95-1 at 84:11–23.

[11] *Id.* at 122:20, 123:20–23.

The interior gate by the barn, as well as a majority of gates in the arena, had a "cowboy latch"—a 45-degree, 1.5 inch or larger sucker rod pull handle that drives through the post into the steel post that stands about six feet in the air at an angle.  Kaup testified that he did not use a padlock or a key lock on the gate to the barn.  By "locked it out," he meant that he "threw the bolt through it so it was shut."[12]  He testified that he is absolutely positive that he closed the gate and put the bolt through it.

Kaup was born and raised on a ranch.  He is familiar with fencing, having constructed fencing of steel and wood posts, steel and wood corrals, and installed steel gates.  In his past experience as a rancher, Kaup has leased other fenced property, and the gates were wrapped with chains but there were no locks.  He has never experienced livestock opening a cowboy-latch gate.  Kaup believed after he closed the interior gate and chained one side of the exterior temporary panel that the fencing and gates around the arena would be sufficient to keep his bulls enclosed.

The arena is approximately 660 yards north of I-70 with pasture and no other fencing or gates between it and I-70.  The Kansas Department of Transportation ("KDOT") had a single cable between the pasture adjoining the arena and I-70.  Kaup knew that once his bull was out of the exterior enclosure of the arena, there was nothing to prevent it from entering the interstate other than the single cable between the pasture and I-70, which was less than one-quarter of a mile away from I-70.

Kaup put his first bull—a black bull—in the arena on approximately August 18, 2018, and planned to eventually add at least seven more bulls.  During the first few days the bull was in the arena, Kaup checked it twice daily.  The bull had access to the main arena, the alleyways, and

---

[12] *Id.* at 123:1–12.

one pen.  For the bull to access the alley, one of the gates of the main arena would have to be open.  Kaup gave no access to anybody to enter the property at the arena, but he did not place "No Trespassing" signs at the arena.

On August 22, 2018, Kaup saw his bull when he visited the arena between approximately 3:30 p.m. until 5:30 p.m.  He walked past the gate with the temporary panel and it was closed.  Kaup was at the arena again at approximately 6:30 p.m. that day, but he did not look for or see the bull, and he did not check the gate.

At approximately 12:01 a.m. on August 23, 2018, Michael Lee was driving a 2015 Ford F-150 pickup truck westbound on Interstate 70 ("I-70") near Goodland.  His wife, Plaintiff Shelly Lee, was a front-seat passenger in the truck.  Mr. Lee had his cruise control set to 80 mph; the speed limit on this section of I-70 was 75 mph.  He slowed down because he knew something was odd and saw that a semi-driver was stopped in the passing lane.  Mr. and Mrs. Lee's vehicle struck a black bull lying in the roadway in the left lane of westbound I-70 near milepost 21.  Mr. Lee lost control of his F-150, causing his vehicle to roll an unknown number of times before it came to rest on the driver's side in the median of I-70.  At or around the same time, two other vehicles also struck the same black bull.  Visibility was low and neither Mr. Lee nor Mrs. Lee saw the "boulder" that Mr. Lee thought he hit at the time.  Mr. and Mrs. Lee were injured in the collision.  They were transported to Goodland Regional Medical Center immediately after the collision and then taken by airplane to Swedish Medical Center in Denver, Colorado for further treatment.

The Kansas State Troopers who investigated the collision did not find any evidence that Mr. Lee was impaired by alcohol or drugs.  Trooper Austin Ackerman testified at his deposition that the bull in the left lane of the interstate was the sole cause of the accident, but he made no

determination about Mr. Lee's speed at the time of the accident.  The Kansas Highway Patrol has a "CHART" team that can respond to the scene of an accident and calculate an estimated pre-accident driving speed, but that team was not called out to the Lees' accident.

Kaup went to the arena at about 7:30 or 8:00 a.m. on August 23, 2018, and discovered that his bull was not there and the gate near the barn was open.  Portions of the gate had been "leaned over."[13]  Kaup believed that his bull left the arena through an interior gate that was open and then through the temporary panel on the exterior that he had chained to one side.  Kaup had not been through that gate after he closed it during the initial walk-through, before he brought his bull into the arena.

Upon discovering the bull missing, Kaup contacted the Sheriff's office and reported a trespass at the arena—he believed a trespasser on the property opened the gate.  Sheriff's Deputy Milton Varney went to the arena to meet with Kaup at about 8:55 a.m.  Kaup told him he thought his bull was the one that may have been in the accident on I-70 the night before.  Deputy Varney walked the property and took photographs for about 45 minutes before preparing a report about his investigation into Kaup's claim of trespass.  Deputy Varney considers it an open case, but testified at his deposition that he found no evidence that a trespass occurred at the arena on August 22, 2018.

Kaup had received phone calls from individuals wanting to get onto the property, although he told them no one had permission to enter.  The prior tenants used the property for roping.  On the morning of August 24th, for the first time Kaup noticed that ropes and rigging for horses were missing from the arena.  He thought it looked like someone had gone through other items and left them behind.  During his deposition testimony, Kaup provided several names of

---

[13] *Id.* at 128:20–129:1.

individuals who previously used the arena for roping; he believes they either trespassed on his property or know who did.

After the accident, Kaup added T-posts to the other side of the temporary panel near the barn and wired it to the T-posts.  Kaup also padlocked all of the exterior gates the morning he discovered the bull was missing.

In his experience with leasing other properties, Kaup has encountered trespassers, such as deer and coyote hunters.  And since the incident on August 23, 2018, Kaup has experienced other acts of trespassing, including cutting the padlocks, opening his gates, and allowing livestock to leave the premises at the arena.  Kaup has experienced close to ten separate trespassing events where his gates have been left open since the date of the Lees' accident.[14]

Mr. Lee passed away on July 1, 2020.  Plaintiff Kathryn Lee is the personal representative of his estate.

## III.    Discussion

Plaintiffs bring a single claim for negligence under Kansas law, claiming that Defendants breached their duty of care to prevent the black bull from running at large onto I-70.  Defendants seek comparative fault, claiming that an unknown trespasser's, Mr. Lee's, and KDOT's fault must be compared under K.S.A. § 60-258(a).  Defendants move for summary judgment on Plaintiffs' negligence claim; Plaintiffs move for summary judgment on comparative fault.  The Court first addresses Defendants' motion for summary judgment before proceeding to comparative fault.

### A.      Plaintiffs' Negligence Claim

---

[14] Plaintiffs' objection under Fed. R. Evid. 407 is overruled and denied.  Evidence of subsequent trespassing incidents is not a "measure . . . taken that would have made an earlier injury or harm less likely to occur," nor is this evidence being used to prove negligence.

To establish negligence under Kansas law, a plaintiff must show (1) the existence of a duty, (2) breach of that duty, (3) an injury, and (4) proximate cause, meaning "a causal connection between the duty breached and the injury."[15]  Under Kansas law, the doctrine of res ipsa loquitur does not apply to livestock escape cases—"[f]armers are not automatically liable just because one of their animals has escaped from a fenced pasture."[16]  Plaintiffs do not assert res ipsa loquitur, but claim that Defendants had a duty to exercise reasonable care to prevent their black bull from running at large onto I-70, that Defendants breached that duty, and that the breach proximately caused the accident that gave rise to their injuries.  Specifically, Plaintiffs claim Defendants breached their duty of care by failing to: (1) make sure the interior gate remained closed; (2) repair or maintain the temporary panel and exterior fencing; (3) use locks on all gates; and (4) post "no trespassing" signs.[17]  Defendants move for summary judgment on the elements of breach and proximate causation.

### 1.    Breach

For Plaintiffs to succeed on their negligence claim, a reasonable jury must be able to conclude that Defendants failed to exercise due care in containing the bull and maintaining their fencing, a question of fact.[18]  K.S.A. § 47-122 makes it "unlawful for any livestock to run at large," and under § 47-123, "[a]ny owner whose livestock shall run at large . . . shall be liable to the person injured for all damages resulting therefrom."  There is no dispute that Defendants owned the bull, and that it escaped the arena's fencing.  But Plaintiffs must show that the bull "with which plaintiff[s] collided was unattended upon the highway because its owner had failed

---

[15] *Hale v. Brown*, 197 P.3d 438, 440 (Kan. 2008) (citing *D.W. v. Bliss*, 112 P.3d 232, 238 (Kan. 2005)).

[16] *Jewett v. Miller*, 263 P.3d 188, 191 (Kan. Ct. App. 2011).

[17] Doc. 87 at 8.

[18] *See Walborn v. Stockman*, 706 P.2d 465, 467–68 (Kan. Ct. App. 1985).

to exercise due care in enclosing it, under all the surrounding facts and circumstances."[19]

"Absolute security is not required."[20]

Defendants move for summary judgment based on the uncontroverted facts that (1) Kaup checked the bull twice each day for the four days it was on the property before the accident; (2) he checked it at 5:30 p.m. the night of the accident and was positive that the interior gate was closed, and (3) although the exterior fence was secured with a temporary panel on only one side near the gate to the barn, Kaup was satisfied that the closed cowboy-latch gate and the temporary panel would be sufficient to enclose the bull.

Moreover, Defendants claim they complied with K.S.A. § 29-101, which requires that "[a]ll domestic animals, other than cats and dogs . . . be enclosed with a fence."  The Kansas Fences statute defines a legal fence as follows:

> Except as otherwise provided in subsection (b), and in addition to fence declared by law to be a legal fence, the following shall be a legal fence: A barbed-wire fence, of not less than three wires, with the third wire from the ground not less than 44 inches nor more than 48 inches from the ground, and the bottom wire not more than 24 inches nor less than 18 inches from the ground, with the center wire equidistant, or nearly so, between upper and lower wires.  All such wires shall be well stretched and barbed, barbs to average not more than nine inches apart and such barbed wire shall be composed of two wires not smaller than No. 13, or one wire not smaller than No. 9, or wires having not less than 950 pounds breaking strength.  All such wires shall be securely fastened to posts, which shall not be more than two rods apart and not less than 20 inches in the ground, and set in a workmanlike manner or the posts may be not more than 48 feet apart, with slats placed perpendicularly, not more than 12 feet apart, between the posts and fastened to the wires by staples, or with holes in the slats. Suspension fences shall not be subject to the requirements of this section.[21]

---

[19] *Abbott v. Howard*, 219 P.2d 696, 703 (Kan. 1950).

[20] *Clark v. Carson*, 362 P.2d 71, 74 (Kan. 1961).

[21] K.S.A. § 29-105(a).

Defendants argue that their fence exceeded statutory requirements because it was wired with cables and piping, which is more durable and effective than barbed-wire, and because it was 53 inches in height.

Plaintiffs argue that a genuine issue of material fact remains on the issue of breach, relying on Kaup's testimony that he only secured the exterior temporary panel to a single post on one side and that he was concerned about the temporary panel during the walk-through. Plaintiffs also point to Deputy Varney's photograph of the temporary panel to demonstrate a genuine issue of material fact about whether Defendants complied with the fence law.  The Court finds that a reasonable jury could conclude that Kaup had knowledge of the temporary panel before the accident, that he was concerned about it, and that his failure to secure the panel on both sides violated the Kansas Fences statute and was a breach of his duty to exercise due care to enclose the bull.

Plaintiffs also submit the affidavit of their expert witness on livestock fencing and livestock behavior, Bob Kingsbery.[22]  Kingsbery opines in the affidavit that the arena's fencing was inadequate due to the temporary panel not being attached to the fence on the north side, leaving an opening to the exterior of the arena.  Kingsbery also states that Kaup should have made sure that all entry gates were closed and locked, and should have posted "no trespassing signs" at the arena since he had been asked by former tenants about picking up belongings. Plaintiffs have met their summary judgment burden of coming forward with evidence sufficient to demonstrate a genuine issue of material fact as to whether Defendants failed to exercise due care in enclosing the bull, under all the surrounding facts and circumstances of this case.

---

[22] Doc. 95-4.

2.      **Proximate Causation**

Next, Defendants move for summary judgment on the element of proximate cause—they argue there is no evidence that an act or omission by Defendants caused the accident.  According to Defendants, "no one knows why the Kaup's bull escaped," therefore, Plaintiffs cannot prove that the alleged breaches caused the Lees' injuries.  But the Court finds that Plaintiffs have come forward with evidence that creates a genuine issue of material fact about whether Defendants' alleged breaches proximately caused the bull to escape and enter I-70.  Specifically, Kaup's testimony supports Plaintiffs' contention that he knew and was concerned about the temporary panel on the exterior fence, which is where the bull escaped after the interior gate was unlatched. Kaup was concerned enough about the panel that he secured it to a post on one side of the fence, but decided not to secure it on the other.  Also, Plaintiffs' expert opines that a combination of repairing the panel, locking the gates, and placing no trespassing signs on the property would have prevented the bull from escaping.  And, when viewing the circumstantial evidence in the light most favorable to Plaintiffs, a reasonable jury could infer that Kaup did not secure either the gate or the panel sufficiently, allowing the bull to escape.   Therefore, a genuine issue of material fact exists about whether Defendants' breaches proximately caused Plaintiffs' damages.

**B.      Comparative Fault**

Under the Kansas comparative fault statute, courts "compare percentages of fault of all alleged wrongdoers."[23]  "The nature of misconduct in such cases is to be expressed on the basis of degrees of comparative fault or causation, and the 'all or nothing' concepts are swept aside."[24] As the Tenth Circuit has summarized:

---

[23] *Yount v. Deibert*, 147 P.3d 1065, 1075 (Kan. 2006) (citing K.S.A. § 60-258a).

[24] *Id.* (quoting *Kennedy v. Sawyer*, 618 P.2d 788, 790, Syl. ¶ 6 (Kan. 1980)).

> Potential tortfeasors need not be made parties before their fault
> may be compared for the purpose of assigning fault.  However,
> allegations that a nonparty's negligence caused a plaintiff's harm
> must be supported by adequate evidence before the negligence of
> that person may be argued to the jury or before the judge may
> instruct the jury to compare the nonparty's fault.[25]

Under the Kansas comparative fault rules, "[i]f a plaintiff voluntarily chooses not to sue [a

potential co-defendant], he simply loses his right to recover against that person the percentage of

the total award which corresponds to the percentage of negligence attributable to the party not

sued."[26]  The Court uses the concept of "phantom parties" "whereby the proportionate fault of

tortfeasors who cannot be made parties to the suit is nevertheless determined."[27]

Defendants contend that three other tortfeasors' who are not parties to this lawsuit

contributed to the Lees' accident and therefore their fault must be compared by the jury: KDOT,

Michael Lee, and an unknown trespasser.  Plaintiffs move for summary judgment on

comparative fault, arguing that there is not adequate evidence to submit the comparative

negligence of these parties to a jury.  The determination of comparative fault is usually a

question of fact that is not appropriate for summary judgment.[28]  However, "[w]here no evidence

is presented on a particular issue, or the evidence presented is undisputed and it is such that the

minds of reasonable persons may not draw differing inferences and arrive at opposing

conclusions with reason and justice, the matter becomes a question of law for the court's

---

[25] *Gust v. Jones*, 162 F.3d 587, 593 (10th Cir. 1998) (citations omitted).

[26] *White Prompt, Inc. v. David A. Kraft & Assocs., LLC*, No. 20-4030-EFM, 2020 WL 6343305, at *2 (D. Kan. Oct. 29, 2020) (second alteration in original) (quoting *Stueve v. Am. Honda Motors Co.*, 457 F. Supp. 740, 749 (D. Kan. 1978)).

[27] *Hartford Fire Ins. Co. v. Forward Sci. LLC*, No. 20-2399-HLT-ADM, 2021 WL 26176, at *3 (D. Kan. Jan. 4, 2021) (quoting *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1496 (10th Cir. 1983)).

[28] *Martell v. Driscoll*, 302 P.3d 375, 385–86 (Kan. 2013) (citations omitted).

determination."[29]  The Court now turns to each party with whom Defendants' contend their fault should be compared to determine whether the matter can be decided as a question of law.

### 1.  KDOT

Defendants first argue that their fault must be compared with KDOT's fault because KDOT breached its affirmative duties to keep I-70 in a reasonably safe condition and maintain its highway fence to prevent livestock from entering the highway.  Plaintiffs argue that KDOT's duty to keep I-70 in a reasonably safe condition did not include constructing fencing different from the single cable wire near the arena, and that there is no evidence the existing fence was in disrepair.

The parties agree that the Kansas Supreme Court's decision in *Reynolds v. Kansas Department of Transportation* is instructive.[30]  *Reynolds* involved a negligence action arising out of a motor vehicle accident where the driver struck a cow and then an embankment on Highway 69—a controlled access road.[31]  KDOT had constructed a heavy gauge woven wire fence in the vicinity that paralleled Highway 69 on both sides, but a section of the fence had been down for more than one year at the time of the accident.[32]  A witness in the case described the fence as a "cattle type" fence.[33]  The plaintiffs sued KDOT, the cow's owner who leased nearby land for grazing cattle, and the owners of the pasture.[34]  Summary judgment was entered in favor of the landowners.[35]  The jury assigned fault to the cow's owner for not maintaining his portion of

---

[29] *Id.* (alteration in original) (quoting *St. Clair v. Denny*, 781 P.2d 1043, 1045–46 (Kan. 1989)).

[30] 43 P.3d 799 (Kan. 2002).

[31] *Id.* at 801.

[32] *Id.*

[33] *Id.*

[34] *Id.* at 802.

[35] *Id.*

fencing where the cow initially escaped, the driver for not maintaining a proper lookout, and KDOT for not maintaining its fence, which the cow had to cross in order to escape private land onto the highway right-of-way.[36]   KDOT appealed the trial court's decision denying its motion for directed verdict.[37]

The Kansas Supreme Court examined what it described as KDOT's "common-law duty to protect the motoring public . . . [by] keep[ing] the highways in a reasonably safe condition."[38] The Kansas Court of Appeals held that KDOT only had a duty to maintain fences where livestock are present, but the Kansas Supreme Court found that this holding was "contrary to the long-established principle that one who undertakes to act so that another reasonably relies becomes subject to the duty to perform his undertaking with reasonable care."[39]   The court relied on the following evidence to find that KDOT breached its duty to maintain the fence along Highway 69 with reasonable care: (1) KDOT's maintenance manual committing it to repair fences when "damage severely reduces their effectiveness in providing safety to the traveling public," (2) the fence between the land on which the cow had been grazing and Highway 69 was down; (3) deer had been seen passing through a gap in the fence for more than one year; (4) a well maintained fence offered some protection from escaped livestock and farmers do not install a second fence; and (5) KDOT was aware that heavy water flow in that area could destroy water gaps that it had installed by the nearby culverts, which would obviously lead to livestock escaping from the landowners' property.[40]

---

[36] *Id.* at 806.

[37] *Id.* at 802.

[38] *Id.* at 803.

[39] *Id.* (citing *Circle Land & Cattle Corp. v. Amoco Oil Co.*, 657 P.2d 532, 537 (Kan. 1983)).

[40] *Id.*

Plaintiffs correctly distinguish both the duty at issue in *Reynolds* and the evidence supporting breach.  In *Reynolds*, KDOT's duty sprang from its failure to maintain a preexisting fence that was designed to prevent escaped animals from reaching the highway.  Here, there is no evidence that a section of fence where the bull escaped was in disrepair; there is no evidence that the single-wire fence was down on this section of the highway or that KDOT otherwise failed to maintain it.  Instead, Defendants suggest that KDOT had a duty to construct a more substantial fence that would have prevented the bull's escape along the stretch of I-70 near the arena. *Reynolds* does not support this assertion of KDOT's duty, nor do Defendants offer adequate evidence that KDOT undertook such measures.  For example, there is no KDOT manual or expert testimony in the record to support that something more than the single-wire fence should have been constructed near the arena in order to protect the motoring public.

Defendants also rely on *Trout v. Koss Construction Co.*[41] in support of their contention that KDOT breached its duty of care.  In that case, the Kansas Supreme Court considered the jury instructions on KDOT's duty of care under general negligence principles in a case where a motor vehicle collided with horses on I-70.[42]  KDOT argued that requiring it to keep the highway in a reasonably safe condition was too broad of a duty, but the court explained that "[t]he maintenance of the highway in a reasonably safe condition is the duty that is owed the public while the acts and omissions of the State's employees in carrying out that duty may or may not constitute negligence."[43]

Defendants offer the following evidence and argument in support of their assertion that KDOT breached its duty to keep the highway in reasonably safe condition in this case: (1) the

---

[41] 727 P.2d 450 (Kan. 1986).

[42] *Id.* at 453–54.

[43] *Id.* at 454.

fact that the bull was able to make its way onto I-70; (2) Kaup's testimony that the section of the fence near his property was one of the few sections of I-70 between his property and the state line that does not have a four-wire fence; and (3) Kaup's testimony that there are places along I-70 where the fencing is "completely down."  Defendants also point to Kaup's testimony that he knew if the bull escaped, only the KDOT fence would prevent it from entering the highway.

This evidence falls short of demonstrating any breach of duty on the part of KDOT.  The mere fact that the bull was able to escape is clearly not sufficient, and Defendants cite no authority to support this proposition.  In fact, the Kansas Supreme Court's decision in *Trout* makes clear that such evidence is insufficient.  In that case, the court addressed a hypothetical example proposed by KDOT in arguing that the duty to keep highways in a reasonably safe condition is too broad: "a factual setting in which vandals remove a portion of pasture fencing which abuts a highway and livestock escape and wander onto the highway causing an accident."[44]  The court rejected KDOT's argument that such facts would render it liable simply based on the presence of livestock on the highway:

> This hypothetical example ignores the fact that the State would not be liable for the independent torts of an independent third party when it has no notice of the conduct or resulting dangerous condition. Liability under the facts presented in the hypothetical example would necessarily be based upon negligence in failing to remove the livestock within a reasonable time after the State had notice of their presence or if it had previous knowledge of the destroyed fence, in failing to correct the defect.[45]

While there is a fact issue in this case about how the arena gate was opened, which allowed the bull to escape both the exterior fence and the single-wire cable fence along the highway, there is no evidence in the summary judgment record that would allow an inference that KDOT had

---

[44] *Id.* at 454.

[45] *Id.* (citing 39 Am. Jur. 2d, Highways, Streets, and Bridges § 354).

previous knowledge that the existing fence was deficient.  Moreover, there is no evidence that KDOT failed to remove the bull within a reasonable time after it was notified that the bull escaped.[46]

Kaup's testimony is also insufficient.  Crediting his testimony that fencing is down in other places along I-70 is not probative that fencing was down in the area where the bull crossed onto the highway, and there is no other evidence that KDOT's fencing was down near the arena. Additionally, there is no evidence beyond Kaup's general impression that more substantial fencing is present in other portions of I-70 that KDOT should have constructed a four-wire fence near the arena.  The KDOT manual is not in evidence and there is no expert or KDOT employee testimony suggesting that a more substantial fence was required in order to comply with KDOT's duty of care.  There is also no evidence that a four-wire fence would have made a difference in this case to stop the bull after it had escaped Defendants' private fencing.  Unlike in *Reynolds*, there is no evidence that farmers in the area did not construct private fencing, instead relying on KDOT fencing to prevent livestock from escaping.  Without more, the Court cannot find that as part of KDOT's duty to protect the motoring public, it was required to construct a four-wire fence along the stretch of I-70 bordering Defendants' arena.

For all of these reasons, the Court finds that the minds of reasonable persons could not draw differing inferences and arrive at opposing conclusions with reason and justice on the issue of KDOT's comparative negligence under the facts of this case.

---

[46] As previously noted, farmers are not automatically liable under Kansas law when one of their animals escapes from a fenced pasture.  Defendants offer no reason why Kansas courts would take a different approach with KDOT.

2.      **Michael Lee**

Next, Plaintiffs argue that there is no competent evidence that Mr. Lee's acts or omissions contributed toward the accident.  Specifically, Plaintiffs contend that Defendants' failure to designate an expert witness on whether Mr. Lee contributed to the accident is dispositive.  Defendants argue there is competent evidence Mr. Lee failed to use reasonable care to keep his vehicle under control and drive within the range of his vision in order to avoid colliding with the bull, to keep a proper lookout for other objects in his line of vision, and to drive at a safe and reasonable speed.  Specifically, they cite Mrs. Lee's testimony that Mr. Lee's cruise control was set at 80 m.p.h. before the accident.  Defendants further argue that Trooper Ackerman's opinion that Mr. Lee was not at fault is incompetent and inadmissible.

Plaintiffs first argue that expert testimony is necessary for Defendants to prove that Mr. Lee's acts or omissions contributed to the accident.  "Whether expert testimony is necessary to prove negligence is dependent on whether, under the facts of a particular case, the trier of fact would be able to understand, absent expert testimony, the nature of the standard of care required of defendant and the alleged deviation from the standard."[47]  The Court finds that the standard of care required for driving a vehicle on the highway at night is within the common understanding of the typical juror and can be determined by non-expert testimony; therefore, Defendants' failure to designate an expert on this issue is not dispositive.

Defendants rely on Mrs. Lee's deposition testimony to support Mr. Lee's comparative fault.  She testified that visibility was poor at the time of the accident and that Mr. Lee had his cruise control set at 80 mph before the accident happened.  Although she believes he slowed

---

[47] *Gaumer v. Rossville Truck & Tractor Co.*, 202 P.3d 81, 84 (Kan. Ct. App. 2009), *aff'd*, 257 P.3d 292 (Kan. 2011).

down when he saw what he thought was a boulder up ahead, she was not watching the speedometer and could not say for certain what his speed was at the time of the collision. Although the Kansas State Troopers who investigated the collision did not find any evidence that Mr. Lee was impaired by alcohol or drugs, Trooper Ackerman testified at deposition that he made no determination about Mr. Lee's speed at the time of the accident.  The Kansas Highway Patrol has a "CHART" team that can respond to the scene of an accident and calculate an estimated pre-accident driving speed, but that team was not called out to the Lees' accident. Given that there is an issue of fact about Mr. Lee's speed at the time of the accident, a reasonable jury could conclude that his failure to maintain a reasonable speed given the road and weather conditions at the time was a contributing factor sufficient to allow the jury to compare fault.[48]

### 3.    Unknown Trespasser

Finally, Defendants seek to have their fault compared to the fault of an unknown trespasser who opened the interior gate at the arena, allowing the bull to escape.  Plaintiffs first argue that summary judgment is required on this comparator because Defendants cannot designate an unknown party for purposes of comparative fault.  The Court disagrees, having found no legal authority to support this proposition.[49]

---

[48] In order to resolve this issue on summary judgment, the Court need not rule on the admissibility of Trooper Ackerman's opinion testimony at trial.  Assuming he testifies at trial as set forth in his deposition, it is up to the jury whether to credit his testimony that Mr. Lee's acts or omissions, including his speed, did or did not contribute to the accident.

[49] *See, e.g., Sandifer Motors, Inc. v. City of Roeland Park*, 628 P.2d 239, 242 (Kan. Ct. App. 1981) (affirming verdict that allocated fault to unknown third parties); *Bittle v. Sweet*, No. 78,665, 1998 WL 36035789 (Kan. Ct. App. Nov. 20, 1998) ("Under the facts of this case, the district court did not err in allowing the jury to compare the fault of those unknown persons who removed the signs."); *Peeks v. Meier*, 264 P.3d 1058 (Kan. Ct. App. 2011) (holding that comparative fault of an unknown truck driver should not have gone to the jury because there was no evidence that attributed fault to that party).

Plaintiffs' reliance on *Hardin v. Manitowoc-Forsythe Corp.*[50] is misplaced.  There, the Tenth Circuit considered whether it was proper to submit to the jury for comparative fault two *named* phantom parties, despite the fact that these parties were not specifically named in the pretrial order.[51]  The trial court determined that the issue of comparative fault was tried by consent under Fed. R. Civ. P. 15(d), amending the pretrial order.[52]  Under Rule 15(d), the test for consent is "whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment."[53] The Tenth Circuit found that one of the newly identified comparators was properly tried by consent because the plaintiff was on notice of the issue of that party's fault and had an opportunity to rebut the defense.[54]  The court found that it was an abuse of discretion for the trial court to allow the comparative fault of the other newly identified party to go to trial because there had been no prior notice of the theory upon which the defendant claimed the party was at fault.[55]

The facts of this case are distinguishable.  There is no issue about whether comparative negligence of the phantom parties identified by Defendants must be tried by consent under Rule 15(d).  Defendants filed a Designation of Comparative Fault on June 3, 2021, asserting their theory that an unknown trespasser must have opened the gate through which the bull escaped.[56]

---

[50] 691 F.2d 449 (10th Cir. 1982).

[51] *Id.* at 455.

[52] *Id.* at 456.

[53] *Id.* (citations omitted).

[54] *Id.* at 456–58.

[55] *Id.* at 459.

[56] Doc. 70.

The Pretrial Order also asserts this theory of comparative fault.[57]  While Defendants have not identified the trespasser in this case, Plaintiffs have had notice and an opportunity to propound discovery as to this theory of comparative fault for approximately one year and there is nothing in the statute that requires the comparator to be specifically identified to survive summary judgment.

Plaintiffs also argue that there is no evidence to support Defendants' theory that an unknown trespasser is at fault for Plaintiffs' damages.  Viewing the evidence in the light most favorable to Defendants, a reasonable jury could find that an unknown trespasser entered the arena sometime after 5:30 pm on August 22, after Kaup checked the bull and ensured that the interior gate was closed and secure.  Kaup had received inquiries from the former tenants of the arena about entering the property to recover items they left behind.  When he arrived at the arena the morning after the accident, the interior gate was open and the exterior panel had been knocked loose.  He later discovered rope and other items missing from the barn.  Kaup had not authorized anyone else to enter the property and Kaup insisted that he did not open the interior gate.  Moreover, while Deputy Varney found no evidence on August 23rd of trespassing on Kaup's property, he considers the investigation open.  Kaup has experienced several other similar trespassing incidents since August 23, 2018.

A reasonable jury could infer from this circumstantial evidence that a trespasser entered Defendants' property sometime after 5:30 p.m. on August 22, 2018, and left the interior gate open.  Plaintiffs' motion advances several arguments that call into question the credibility of Kaup's testimony and the probative value of this circumstantial evidence.  But it is not for the Court to weigh evidence or make credibility findings on summary judgment.  The Court agrees

---

[57] Doc. 87 at 8.

with Defendants that there is competent evidence to support submitting the issue of an unknown trespasser's comparative fault to the jury.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Summary Judgment (Doc. 88) is **denied**.  Plaintiffs' Motion for Summary Judgment (Doc. 90) is **granted in part** as to KDOT and **otherwise denied**.

**IT IS SO ORDERED.**

Dated: May 24, 2022

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE